IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Joe Hand Promotions, Inc., | ) | C.A. No.: 6:13-cv-02467-TMC-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Upstate Recreation d/b/a Leeg's Nightclub | ) | |
| and Chris Ruegsegger, | ) | |
| | ) | |
| Defendants.[1] | ) | |
| | ) | |

This matter is before the Court on a motion for summary judgment filed by Plaintiff against Defendant Chris Ruegsegger [Doc. 37]; a motion for default judgment filed by Plaintiff against Defendant Upstate Recreation d/b/a Leeg's Nightclub [Doc. 40]; and a motion to dismiss filed by Defendant Chris Ruegsegger [Doc. 42]. Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pre-trial matters in cases involving litigation by individuals proceeding pro se and to submit findings and recommendations to the District Court.[2]

Plaintiff filed this case on September 11, 2013, asserting claims under the Communications Act, 47 U.S.C. § 605, and the Cable Communications Policy Act, 47 U.S.C. § 553, as well as a state law claim for conversion. [*Id.*] Plaintiff filed a motion for summary judgment against Defendant Chris Ruegsegger ("Ruegsegger") on March 6,

---

[1]Ricky D. Garner, Christopher Condrey, and Laurie McGlynn were terminated as Defendants in this action pursuant to a notice of voluntary dismissal filed on November 5, 2013. [Doc. 22.]

[2]Defendant Chris Ruegsegger is proceeding pro se in this case.

2014. [Doc. 37.] On March 17, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Ruegsegger was advised to respond to the motion and of the possible consequences if he failed to adequately respond. [Doc. 38.] Ruegsegger filed a response in opposition on March 18, 2014 [Doc. 41], and Plaintiff filed a reply on March 28, 2014 [Doc. 45].

Defendant Upstate Recreation d/b/a Leeg's Nightclub ("Upstate Recreation") was served on October 28, 2013 [Doc. 19] but failed to file an answer or otherwise respond to the Complaint. The Clerk's Entry of Default was filed as to Upstate Recreation on January 22, 2014. [Doc. 35.] Plaintiff filed a motion for default judgment on March 7, 2014 [Doc. 40], and Upstate Recreation failed to respond to the motion for default judgment.

Ruegsegger filed a motion to dismiss[3] on March 18, 2014 [Doc. 42], to which Plaintiff filed a response in opposition on April 4, 2014 [Doc. 46]. Accordingly, the motions are ripe for review.

---

[3]Ruegsegger submitted one document to the Court, titled "Response to Motion to Dismiss," which the clerk appropriately filed both as an opposition to Plaintiff's motion for summary judgment and as a motion to dismiss. [*See* Docs. 41, 42 ("Response to Motion to Dismiss," which both responds to the arguments raised in Plaintiff's motion for summary judgment and requests that the Court "dismiss this suit on the bases it is fraudulent and flat out outrageous lies and any information they claim to have received or obtained would have been done illegally").]

## BACKGROUND[4]

Plaintiff is a Pennsylvania corporation with its principal place of business in Feasterville, Pennsylvania. [Doc. 1 ¶ 5.] Upstate Recreation is a South Carolina eleemosynary incorporation that does (or did) business as Leeg's Nightclub at 3500 Wade Hampton Boulevard, Taylors, South Carolina 29687.[5] [*Id.* ¶ 6.] Ruegsegger is the sole owner of Upstate Recreation. [Doc. 5 ¶ 15.] By contract, Plaintiff paid for and was granted the exclusive nationwide television distribution rights to *Ultimate Fighting Championship 135: Jon Jones v. Quinton Jackson*, including all under-card bouts and fight commentary encompassed in the television broadcast of the main event, which aired on September 24, 2011 ('the Program"). [Doc. 1 ¶ 19; Doc. 37-6 ¶ 3.] Pursuant to individual contracts, Plaintiff entered into subsequent sublicensing agreements, granting limited sublicensing rights, specifically the rights to publicly exhibit the Program to customers within commercial establishments, with various persons and entities throughout North America, including persons and entities in South Carolina. [Doc. 1 ¶ 20.] Plaintiff expended substantial

---

[4]With respect to Upstate Recreation, the facts in this case are undisputed by virtue of Upstate Recreation's default. *See DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (accepting plaintiff's allegations against defaulting defendant as true (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). With respect to Ruegsegger, most facts are deemed admitted by Ruegsegger's failure to respond to Plaintiff's Requests for Admissions. Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection . . . ."); [Doc. 37-2 ¶ 3–4 (Declaration of Leonard R. Jordan, Jr., averring that the Requests for Admissions were served on Ruegsegger on October 11, 2013, but that no responses were received from Ruegsegger); Doc. 60 (Plaintiff's Requests for Admissions to Ruegsegger)].

[5]Ruegsegger contends Upstate Recreation was a nonprofit company and Leeg's Nightclub was a limited liability company. [Doc. 5 ¶ 6.]

monies marketing, advertising, promoting, administering, and transmitting the Program. [*Id.* ¶ 21.]  Plaintiff did not sublicense the Program to Defendants.  [Doc. 37-6 ¶ 3.]

On September 24, 2011, an investigator for Plaintiff, Shane Southern ("Southern"), visited Leeg's Nightclub,[6] during which time Southern's affidavit indicates that a television in Leeg's Nightclub displayed the Program.  [Doc. 37-4 at 1.]  Southern describes the bartender who served him and the number of televisions and other distinguishing features of the establishment.  [*Id.*]  He also describes the name and attire of the fight participants in a preliminary bout of the Program.  [*Id.*]  Southern avers that he counted the number of patrons three separate times, and the headcounts were ten, eighteen, and twelve, and that Leeg's Nightclub has a capacity of 300 people.  [*Id.*]  Based on this 300-person capacity, the cost of a sublicense for the Program would have been $2,250.  [*Id.*; Doc. 37-6 at 3 ¶ 8; 26.]

Based on these observations, Plaintiff's Complaint alleges that Defendants and/or their agents, servants, workmen, and employees unlawfully intercepted, received, published, divulged, and exhibited the Program and that such interception, receipt, publication, divulgence, and exhibition was done willfully and for purposes of direct or indirect commercial advantage or private financial gain.  [Doc. 1 ¶¶ 22, 23.]  Plaintiff further alleges that Ruegsegger had the right and ability to supervise the alleged misconduct and had an obvious and direct financial interest.  [*Id.* ¶¶ 24, 25.]

---

[6]The Affidavit contains a discrepancy as to the time Southern was present at Leeg's Nightclub.  He stated that he arrived at 9:45 p.m. and left at 10:35 a.m. on September 24, 2011.  [Doc. 37-4 at 1.]

## DISCUSSION

Section 553 prohibits the unauthorized interception or receipt of cable programming, while § 605 prohibits the use of equipment for the purpose of unauthorized decryption of satellite cable programming. *See* 47 U.S.C. § 553; 47 U.S.C. § 605. Section 553 provides, in relevant part,

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). Statutory damages under § 553 range from $250 to $10,000 for all violations with a maximum $50,000 enhancement for willfulness. 47 U.S.C. §§ 553(c)(3)(A)(ii), 553(c)(3)(B). Additionally, § 553 allows for an award of attorney's fees and costs. 47 U.S.C. § 553(c)(2)(C). Section 605 provides, in relevant part,

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Statutory damages under § 605 range from $1,000 to $10,000 with a $100,000 maximum enhancement for willfulness. 47 U.S.C. §§ 605(e)(3)(C)(i)(II),

5

605(e)(3)(C)(ii).  Additionally, § 605 provides for a mandatory award of attorney's fees and costs.  47 U.S.C. § 605(e)(3)(B)(iii).  Both § 553 and § 605 permit any aggrieved party to bring suit against the violator in federal court.[7]  *See* 47 U.S.C. § 553(c)(1); 47 U.S.C. § 605(e)(3)(A).  Further, both are strict liability statutes.  *See J & J Sports Prods., Inc. v. Delgado*, No. CIV. 2:10-2517 WBS KJN, 2012 WL 371630, at *3 (E.D. Cal. Feb. 3, 2012).

"Conversion is defined as the unauthorized assumption in the exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights."  *Moseley v. Oswald*, 656 S.E.2d 380, 382 (S.C. 2008) (citation omitted).  To prove the tort of conversion, "the plaintiff must establish either title to or right to the possession of the personal property."  *Id.*; *see also Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 684 S.E.2d 756, 763 (S.C. 2009) (discussing the availability of a conversion claim for documented, intangible property rights).

**Motion for Default Judgment Against Upstate Recreation**

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for the entry of default judgment by a court against a party in default.  When a defendant defaults, the court is to accept as true the well-pleaded factual allegations in the complaint as to defendant's liability.  *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). If the court determines that liability is established, it must then determine the appropriate amount of damages.  *Ryan*, 253 F.3d at 780–81.  Unlike allegations of fact, the court does not accept allegations regarding damages as true, but rather makes its own

---

[7]While an aggrieved party is not defined in § 553, § 605 defines an "aggrieved party" to include "any person with proprietary rights in the intercepted communication by wire or radio."  47 U.S.C. § 605(d)(6).

independent determination. *E.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999).  In this regard, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

Here, Plaintiff has submitted additional proof through Southern's affidavit.  As stated, the affidavit provides evidence that the Program was displayed on at least one television at Leeg's Nightclub[8] and provides details of the portion of the Program Southern watched.  [Doc. 37-4.]  Accordingly, Plaintiff has established that the Program was unlawfully intercepted and displayed at Leeg's Nightclub in violation of § 605, and judgment should be entered in Plaintiff's favor against Upstate Recreation.[9]

**Motion to Dismiss by Ruegsegger**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support her claim and entitle her to relief.  When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Mylan*

---

[8]Southern avers that there were six televisions at Leeg's Nightclub, but that two of the televisions were playing college football and two of the televisions were turned off. [Doc. 37-4 at 1.]

[9]With respect to Upstate Recreation, given its default, Plaintiff has been unable to conduct discovery to determine the mode of transmission of the Program—by cable or satellite signal.  However, because all facts are undisputed by virtue of Upstate Recreation's default and Plaintiff has elected to proceed under § 605, Plaintiff has established liability under § 605 with respect to Upstate Recreation.  *See Joe Hand Promotions, Inc. v. Precint Bar-DAXLAM, Ltd.*, C.A. No. 3:10-cv-00199-CMC, 2010 WL 3420189, at *2 n.2 (D.S.C. Aug. 23, 2010) ("Although liability was established under both Sections 605 and 553 by virtue of Defendants' default, it would be inappropriate to enter judgment under both statutes.  This is because the two statutory schemes provide relief for the alternative means by which transmission of the Fight might have been obtained.").

*Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference.  *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985).  If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants

compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Here, Ruegsegger has provided no basis to dismiss the Complaint. Instead, Ruegsegger makes conclusory allegations that this action is fraudulent, full of misinformation and lies, and based on false information. [Doc. 42.] However, as stated, Plaintiff's allegations are taken as true on a motion to dismiss. Accordingly, the motion to dismiss should be denied.

**Motion for Summary Judgment Against Ruegsegger**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355,

365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

### *Statutory Claims*

The evidence of record establishes that the Program was unlawfully intercepted and displayed on at least one television at Leeg's Nightclub. Plaintiff had the exclusive commercial distribution rights for the Program and any commercial establishment that wished to distribute the Program had to contract with Plaintiff for a sublicensing agreement. [Doc. 37-6 ¶¶ 3, 8.] Plaintiff did not sublicense the Program to Defendants. [*Id.* ¶ 3.] Southern's affidavit avers that the Program was displayed on at least one television at

11

Leeg's Nightclub and provides details of the portion of the Program Southern watched. [Doc. 37-4.]  Additionally, by his failure to respond to Plaintiff's Requests for Admissions, Ruegsegger has admitted that he unlawfully intercepted the Program and broadcast it at Leeg's Nightclub without Plaintiff's authorization.  In his response in opposition to the motion for summary judgment, Ruegsegger provides nothing more than conclusory allegations that no fights were ever shown at Leeg's Nightclub.  However,  conclusory allegations or denials, without more, are insufficient to preclude granting a summary judgment motion.  *Ross*, 759 F.2d at 365.  Accordingly, Plaintiff has established that the Program was unlawfully intercepted and displayed at Leeg's Nightclub in violation of either § 553 or § 605.  *See J & J Sports Productions, Inc. v. Hernandez*, No. 1:11CV749, 2013 WL 5937909, at *2 (M.D.N.C. Nov. 5, 2013) (recognizing that "[e]stablishing a violation of § 553 requires proof of the same elements as § 605"—(1) that the defendant did not obtain a license from the plaintiff to receive the signal for the program at the commercial establishment, (2) that the program was unlawfully received and exhibited at the commercial establishment, and (3) that the plaintiff is a person aggrieved); *Delgado*, 2012 WL 371630, at *3 (noting § 553 and § 605 are strict liability statutes).

An additional analysis must be undertaken, however, with respect to potential liability for Ruegsegger as an individual.  To hold an individual liable for these unlawful actions, Plaintiff "must show that the corporate officer had a 'right and ability to supervise the violations, and that [he] had a strong financial interest in such activities.'"  *J & J Sports Productions, Inc. v. J.R. 'Z Neighborhood Sports Grille, Inc.*, C.A. No. 2:09-03141-DCN-RSC, 2010 WL 1838432, at * 2 (D.S.C. Apr. 5, 2010) (quoting *J & J Sports Productions,*

*Inc. v. Ribeiro*, 562 F.Supp.2d 498, 501 (S.D.N.Y. 2008)) (alteration in *J.R. 'Z Neighborhood Sports Grille*). Here, Ruegsegger admits he is the sole owner and operator of Upstate Recreation. [Doc. 5 ¶ 15.] As the sole owner and operator of Upstate Recreation, it follows that Ruegsegger had the right and ability to supervise the actions of Upstate Recreation and had a financial interest in broadcasting the Program. Additionally, by his failure to respond to Plaintiff's Requests for Admissions, Ruegsegger has admitted that he was present on September 24, 2011; that the employees at Leeg's Nightclub worked for and on behalf of Ruegsegger; and that the Program was broadcast for Ruegsegger's direct or indirect financial gain. [Doc. 60 at 5.] Finally, in his response in opposition to the motion for summary judgment, Ruegsegger does not challenge his supervisory abilities or financial interest in Upstate Recreation. [*See* Doc. 41.] Accordingly, the Court finds that Ruegsegger had the right and ability to supervise the broadcast of the Program and had a financial interest in the broadcast of the Program. As such, Plaintiff's motion for summary judgment should be granted on Plaintiff's § 605 claim against Ruegsegger.[10]

### Conversion Claim

The evidence of record establishes that Plaintiff owned the exclusive license to the Program and Ruegsegger unlawfully violated Plaintiff's rights by broadcasting the Program without paying the license fee. As such, Plaintiff's motion for summary judgment should be granted on Plaintiff's conversion claim against Ruegsegger.

---

[10]With respect to Ruegsegger, because all requests in Plaintiff's Requests for Admissions are deemed admitted, including that satellite technology was used, Plaintiff has requested that liability be found under § 605. [Doc. 37-1 at 6]; *see Precint Bar-DAXLAM, Ltd.*, 2010 WL 3420189, at *2 n.2.

13

**Damages**

### *Damages Under § 605*

<u>Statutory Damages</u>

In its memorandum in support of its motion for default judgment, Plaintiff seeks an award of $10,000 in statutory damages[11] [Doc. 40-1 at 8], which, as stated, is the maximum available pursuant to § 605.  Statutory damages are more appropriate where, as here, actual damages are difficult to prove.  *See G & G Closed Circuit Events, LLC v. Camden Wing Shack, LLC*, C/A No. 3:12-2933-JFA-SVH, 2013 WL 6388481, at * 5 (D.S.C. Dec. 6, 2013).  As noted by many decisions in this District,

> Courts have used various methods of determining an appropriate amount of statutory damages.  Some courts fashion an award by considering the number of patrons who viewed the programming, often multiplying that number by the cost if each had paid the residential fee for watching such programming.  Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff.  Other courts award a flat amount for a violation.

*Joe Hand Promotions, Inc. v. Todd*, Civil Action No. 4:11-cv-3031-TLW-TER, 2012 WL 2178851, at *3 (D.S.C. Mar. 12, 2012), *Report and Recommendation adopted by* 2012 WL 2178822 (D.S.C. Jun. 13, 2012).  The Fourth Circuit has not addressed any of these methods.

In line with awards recommended and/or awarded in this District for similar violations, the undersigned recommends a statutory damages award of $10,000.  *See Joe*

---

[11]In its memorandum in support of its motion for summary judgment, "Plaintiff respectfully requests that this Court utilize its discretion to make an award that both sufficiently compensates Plaintiff and functions as an effective deterrent."  [Doc. 37-1 at 12.]

14

*Hand Promotions, Inc. v. Rascals Café, LLC*, C/A No. 4:11-2135-TWL-KDW, 2012 WL 4762142, at *5 (Aug. 31, 2012), *Report and Recommendation adopted by* 2012 WL 4762452 (D.S.C. Oct. 5, 2012) (awarding five times the license fee); *Todd*, 2012 WL 2178851 (awarding approximately five times the license fee). Here, the maximum statutory award is less than five times the license fee Defendants should have paid to legally broadcast the Program.

<u>Enhanced Damages</u>

In its memorandum in support of its motion for default judgment, Plaintiff further seeks an award of $100,000 in enhanced damages[12] [Doc. 40-1 at 11], which, as stated, is the maximum available pursuant to § 605. The statute permits a court, in its discretion, to increase damages by up to $100,000 per violation when the violation is "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). When determining whether conduct was willful, justifying enhanced damages, courts typically consider certain factors, including "(1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks." *J.R. 'Z Neighborhood Sports Grille, Inc.*, 2010 WL 1838432, at *2 (citation omitted).

Here, in addition to the admissions based on Upstate Recreation's default and Ruegsegger's failure to respond to Plaintiff's Requests for Admissions, Plaintiff's President avers that the Program could not have been "mistakenly, innocently, or accidentally

---

[12]Plaintiff does not seek a specific amount in enhanced damages in its memorandum in support of its motion for summary judgment.

15

intercepted." [Doc. 37-6 ¶ 9.] Further, Southern paid a cover charge of $25 to enter Leeg's Nightclub. [Doc. 37-4 at 1.] Although the Court finds that Defendants' violations were willful and that more than nominal damages should be awarded to deter future violations, the Court does not conclude that the maximum enhancement is appropriate in this case. As such, the undersigned recommends an enhanced damages award of $25,000, or two-and-one-half times the statutory award, in line with awards recommended and/or awarded in this District for similar violations. *See Rascals Café, LLC*, 2012 WL 4762142, at *5 (awarding three times the statutory award); *Todd*, 2012 WL 2178851 (awarding two times the statutory award).

## Attorneys' Fees and Costs

The Communications Act requires that a court award "full costs, including reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). As the rightful owner of the Program broadcast rights, Plaintiff is an aggrieved party that has prevailed. Accordingly, Plaintiff is entitled to costs and attorneys' fees in this case. In its memorandum in support of its motion for default judgment, Plaintiff seeks $3,207.50 in attorneys' fees and costs and has submitted affidavits of its South Carolina and California Counsel to support this request.[13] [Doc. 40-1 at 11–12; Docs. 40-7–40-10.]

---

[13]In its memorandum in support of its motion for summary judgment, Plaintiff requests that it be granted fourteen days from the entry of judgment to submit its request for attorneys' fees and costs. [Doc. 37-1 at 16.] However, because the motion for summary judgment and motion for default judgment were filed one day apart and given the Court's recommendation below that judgment be entered against both Ruegsegger and Upstate Recreation and that they be jointly and severally liable for damages, the undersigned finds the affidavits submitted to support attorneys' fees and costs instructive with respect to both motions filed by Plaintiff.

*Costs*

Plaintiff seeks recovery of the statutory filing fee, service of process fees, and investigative costs.  The undersigned is not aware of cases in the Fourth Circuit or courts in this District that have discussed what "full costs" are to be awarded to a prevailing party pursuant to 47 U.S.C. § 605(e).  In *Kingvision Pay–Per–View, Ltd. v. Autar*, 426 F.Supp.2d 59 (E.D.N.Y. 2006), the court considered the legislative history and determined that "full costs" included more than those costs taxable under 28 U.S.C. § 1920, the general statute setting out limited taxable costs.  *See id*. at 65–67.

Based on the statute's mandatory award of "full costs," the undersigned finds it appropriate to award the type of costs requested, so long as these costs are adequately explained and supported.  Accordingly, an award of the $400 statutory filing fee is appropriate in this matter.  Additionally, Plaintiff's South Carolina counsel sets forth the cost of service of the Summons and Complaint as totaling $250 and has attached the invoices for the same.  [Doc. 40-7 ¶ 5; Doc. 40-9.]  Thus, Plaintiff has provided sufficient documentation and explanation of these costs, and the undersigned recommends they be awarded.[14]

However, based on this record, the undersigned cannot recommend an award of $450 in investigative costs.  The *Autar* court specifically found investigative costs could be recovered under 47 U.S.C. § 605(e).  426 F.Supp.2d at 67 (noting Senate Committee's

---

[14]Plaintiff's California counsel includes in his declaration $350 advanced to South Carolina counsel for the filing fee and $100 advanced to South Carolina counsel "to identify and serve initiating suit papers" upon Defendants.  [Doc. 40-10 ¶¶ 3–4, 11.]   However, it appears that these amounts are subsumed by the amount South Carolina counsel seeks for the filing fee and service of process fees.

17

intent that full costs include "reasonable investigative fees (related to the action brought) of an aggrieved party") (internal quotation and citation omitted).  However, that court also found it was not required to award such fees and that an award requires the prevailing party to appropriately show that the fees sought were reasonable, i.e., the investigator's billing rate, time, and qualifications.  *Id.*  Because the plaintiff failed to document the investigator fees, the *Autar* court denied the same.  *Id.* at 67–68.  In this case, Plaintiff has provided no detail regarding the $450 in investigative fees sought.  The undersigned concurs with the *Autar* court that fees for necessary investigative services may be awarded, but that the fees must be supported with specific information about the time the investigator spent on the matter, his hourly rate, and his qualifications to charge such fees. Without this supporting information, the undersigned recommends this portion of Plaintiff's request for costs be denied.

In sum, the undersigned recommends $650 be awarded in costs as follows: $400 for the filing fee and $250 for service of process.

<u>*Attorneys' Fees*</u>

When determining what constitutes a reasonable number of hours and the appropriate hourly rates, i.e., in calculating the lodestar fee, a court must consider the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the

18

undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978); *Jackson v. Estelle's Place, LLC*, 319 F. App'x 239, 243 (4th Cir. 2010). Although a court must consider all twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case. "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." *E.E.O.C. v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Further, this Court's Local Civil Rule 54.02(A) provides that attorneys' fee petitions must comply with *Barber* "and shall state any exceptional circumstances and the ability of the party to pay the fee."

The information Plaintiff provided, coupled with the Court's knowledge of rates in work of this type in this District, supports the $2,107.50 in fees submitted on Plaintiff's behalf. Based on the information and supporting documents before the Court at this time, the undersigned recommends a total award of costs and attorneys' fees in the amount of $2,757.50—$650 costs plus $2,107.50 attorneys' fees.

19

### *Damages Under Plaintiff's Conversion Claim*

Generally, "the damages for conversion of personal property amount to the value of the property with interest." *Joe Hand Promotions, Inc. v. Pee Dee Benevolent Soc'y, Inc.*, Civil Action No. 4:11-cv-2022-TLW-TER, 2012 WL 2178706, at *6 (S.C.D. Mar. 12, 2012). In similar scenarios, courts have interpreted this value to encompass the amount that a defendant would have had to pay for a commercial sublicense to legally air the program. *See Todd*, 2012 WL 2178851, at *3 (finding the appropriate damages on the plaintiff's conversion claim to be $1,100, calculated by the licensing fee the defendants would have had to pay for an establishment with a 75-person capacity). Here, the applicable licensing fee for Defendants' establishment, which has a 300-person capacity, would have been $2,250.[15]

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Plaintiff's motion for summary judgment against Ruegsegger be GRANTED, Plaintiff's motion for default judgment against Upstate Recreation be GRANTED, and Ruegsegger's motion to dismiss

---

[15]The Court recognizes that Plaintiff cannot recover damages under both its statutory claim and its state law conversion claim. Indeed, "recovery under both § 605 and the tort of conversion would result in an impermissible double recovery for the same loss." *Joe Hand Promotions, Inc. v. Flamingo's Food & Spirits, L.L.C.*, Civil Action No. 0:11-2431-MBS, 2012 WL 2048192, at *2 (D.S.C. Jun. 5, 2012). Thus, Plaintiff must "elect between recovery on the statutory (Section 605) claim and the conversion claim." *Precint Bar-DAXLAM, Ltd.*, 2010 WL 3420189, at *4.

Here, it appears Plaintiff will elect to recover on the statutory claim because, in its memorandum in support of its motion for default judgment, Plaintiff states that it will withdraw its other causes of action if a judgment were granted under § 605. [Doc. 40-1 at 3 n.1.] Further, in its motion for summary judgment, Plaintiff "recognizes that the District of South Carolina has not permitted recovery fo both conversion and statutory damages." [Doc. 37-1 at 13.] However, out of an abundance of caution, Plaintiff should be given fourteen days to elect between recovery on the statutory claims or the conversion claim.

be DENIED.  It is further recommended that Plaintiff be awarded either (1) statutory damages in the amount of $10,000, enhanced damages in the amount of $25,000, and attorneys' fees and costs in the amount of $2,757.50, for a total award of $37,757.50 on its claim under 47 U.S.C. § 605 or (2) actual damages in the amount of $2,250 on its conversion claim.  Within fourteen days of the date of this Report and Recommendation, Plaintiff shall elect between recovery on the statutory claim or the conversion claim.  It is further recommended that Defendants be jointly and severally liable for the damage award elected by Plaintiff.

 IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

January 28, 2015
Greenville, South Carolina